**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHARMIST THOMPSON, | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| vs. | § | |
| | § | **COMPLAINT** |
| BRIDGECREST ACCEPTANCE | § | Jury Trial Demanded |
| CORPORATION AND PARADIGM | § | |
| RECOVERY & REMARKETING, LLC, | § | |
| Defendant. | § | |

**NATURE OF ACTION**

1.      Plaintiff Charmist Thompson brings this action against Defendants Paradigm Recovery & Remarketing, LLC ("PRR") and Bridgecrest Acceptance ("Bridgecrest ") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., the Texas Uniform Commercial Code, TEX. BUS. & COM. CODE § 9.101 *et seq*., the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE § 392.001 *et seq*., and Texas common law.

**JURISDICTION, VENUE, AND STANDING**

2.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where he resides in this district, and where Defendants transact business in this district.

4.      "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may

1

'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992).

5.      "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)).  Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing.  *See id.* at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); *see also Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

6.      "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is *not* a necessary condition."  *Lane*, 2016 WL 3671467 at *4 (emphasis in original).

### THE FAIR DEBT COLLECTION PRACTICES ACT

7.      Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

8.      "[T]he FDCPA is a strict liability statute—collector 'need not be deliberate, reckless, or even negligent to trigger liability . . . .'" *Walker v. Pharia, LLC*, No. 4:09-CV-369-Y, 2010 WL 565654, at *3 (N.D. Tex. Feb. 18, 2010) (quoting *Ross v. RJM Acquisitions Runding LLC*, 480 F.3d 493, 495 (7th Cir. 2007)).

## THE UNIFORM COMMERCIAL CODE

9.      "Article 9 of the UCC is a comprehensive statutory scheme governing the rights and relationships between secured parties, debtors, and third parties." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007).

10.     Article 9 serves "to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." *Haas' Estate v. Metro–Goldwyn–Mayer, Inc.*, 617 F.2d 1136, 1140 (5th Cir. 1980).

11.     After a default, the UCC gives secured parties the right to repossess collateral. *See* TEX. BUS. & COM. CODE § 9.609.

12.     There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if a secured party finds that it cannot get possession without committing a breach of the peace, it must stay its hand, and resort to the law. *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 152 (Tex. 1992).

13.     This is so because the preservation of peace, "is of more importance to society than the right of the owner of a chattel to get possession of it." *Willis v. Whittle,* 82 S.C. 500, 64 S.E. 410 (1909); *see also Singer Sewing Mach. Co. v. Phipps,* 49 Ind.App. 116, 94 N.E. 793 (1911) (quoting 3 William Blackstone, Commentaries *4) ("[T]his natural right of recaption shall never be exerted, where such exertion must occasion strife . . . or endanger the peace of society.").

## THE TEXAS DEBT COLLECTION ACT

14.     In 1973, the Texas State Legislature enacted the Texas Debt Collection Act to "control and curtail the practices used in the collection of debt" which the legislature viewed

unethical and harassing to consumers.  *See* House Comm. on Judiciary, Bill Analysis, Tex. S.B. 252, 63rd Leg., R.S. (1973).

15.     Among the TDCA's requirements, any debt collector engaging in debt collection from consumers in the state of Texas must obtain a surety bond: "A third-party debt collector . . . may not engage in debt collection unless the third-party debt collector . . . has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section." TEX. FIN. CODE § 392.101.

16.     To further this purpose and to promote transparency and fairness, the TDCA further requires that "[a] copy of the bond must be filed with the secretary of state." *Id*.

17.     Like the FDCPA, the TDCA is a strict liability lawsuit which does not require proof of actual damages in order to recover statutory damages under the Act.  *See Marauder Corp. v. Beall*, 301 S.W.3d 817, 822 (Tex. App. 2009).

### FALSE IMPRISONMENT UNDER TEXAS COMMON LAW

18.     In Texas, "[t]he elements of false arrest and false imprisonment are similar enough to be indistinguishable." *Villegas v. Griffin Indus.,* 975 S.W.2d 745, 754 (Tex. App.— Corpus Christi 1998, no pet.).

19.     In order to establish civil liability for false arrest or false imprisonment, a plaintiff must show a wrongful interference with his freedom. *Montgomery Ward & Co. v. Garza,* 660 S.W.2d 619, 621 (Tex.App.—Corpus Christi 1983, no writ). The elements of false arrest or false imprisonment are a willful detention of the person, against the consent of the person, without authority of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Sears, Roebuck & Co. v. Castillo,* 693 S.W.2d 374, 375 (Tex.1985).

4

20.     "Although physical restraint is one way to establish a willful detention, it is not the only way." *Grant v. Stop-N-Go Mkt. of Texas, Inc.*, 994 S.W.2d 867, 872 (Tex. App. 1999) (citing *Johnson,* 891 S.W.2d at 645).

21.     A willful detention may also be accomplished by violence, threats, or any other means that restrains a person from moving from one place to another. *Id*.

22.     When a plaintiff alleges that a detention was effected by a threat, he must demonstrate the threat was such as would inspire a just fear of injury to his person, reputation, or property.  *Id.*

### PARTIES

23.     Plaintiff is a natural person who at all relevant times resided in Houston, Texas.

24.     Plaintiff is allegedly obligated to pay a debt.

25.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and TEX. FIN. CODE § 392.001(1).

26.     Bridgecrest is an Arizona corporation that regularly purchases consumer paper in the form of automobile loans and does business in Texas.

27.     Bridgecrest is a "secured party" as defined by TEX. BUS. & COM. CODE § 9.102(a)(73).

28.     Bridgecrest is an entity which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "consumer debt" as defined by TEX. FIN. CODE § 392.001(2).

29.     Bridgecrest is a "debt collector" as defined by TEX. FIN. CODE § 392.001(6).

30.     PRR is a Texas limited liability company that at all relevant times was acting as a repossession agent working at the behest of Bridgecrest.

31.     At all relevant times, PRR was an entity using instrumentalities of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

32.     PRR is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

33.     On or about January 10, 2018, Plaintiff purchased a 2016 Dodge Charger (the "Vehicle") from non-party Carvana, LLC.

34.     Plaintiff purchased the Vehicle for his own personal family and household use.

35.     The Vehicle constitutes "consumer goods" as defined by TEX. BUS. & COM. CODE § 9.102(a)(23).

36.     Plaintiff financed the vehicle.

37.     In connection with the transaction, Plaintiff executed a loan agreement in Carvana's favor, which was subsequently assigned to Bridgecrest.

38.     As part of the agreement, Carvana and its assignees obtained a security interest in the Vehicle.

39.     The Vehicle constitutes "collateral" as defined by TEX. BUS. & COM. CODE § 9.102(a)(12).

40.     Thereafter, Plaintiff began to make his payments under the contract to Bridgecrest.

41.     Sometime later, Bridgecrest began to believe that Plaintiff was behind on his payments.

42.     Thereafter, Bridgecrest engaged its repossession agents, PRR, to repossess Plaintiff's vehicle.

43.     On or about October 26, 2019, at around 8:00 P.M., PRR, went to Plaintiff's home to repossess the Vehicle.

44.     Plaintiff noticed PRR's arrival and immediately confronted PRR and protested the repossession loudly and unequivocally.

45.     Plaintiff jumped in the vehicle, and PRR attempted to repossess it while he occupied it.

46.     Plaintiff and PRR's staff argued loudly and eventually Plaintiff drove the Vehicle away.

47.     However, PRR's staff blocked him in and would not let him leave.

48.     Eventually, Plaintiff's girlfriend arrived in her vehicle and PRR's staff moved to allow her to pass.

49.     When PRR did so, Plaintiff was finally able to leave the scene.

50.     As a result of PRR's conduct, Plaintiff suffered severe stress, agitation, and embarrassment.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692f(6)(A)
## PRR

51.     Plaintiff repeats and re-alleges each factual allegation contained above.

52.     Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." TEX. BUS. & COM. CODE § 9.609(b)(2).

53.     However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id*.

54.     A repossession agent breaches the peace if he continues with a repossession over a consumer's protest. *See Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), *dismissed* (Apr. 3, 1974) (because consumer protested repossession secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *First & Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank & Tr. Co. of Ravenna*, 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988)) ("[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections.").

55.     Plaintiff confronted PRR's staff and loudly, and unequivocally protested PRR's repossession.

56.     Once Plaintiff protested PRR's repossession, it lost the right to continue with the repossession.

57.     Nonetheless, PRR continued with its repossession and thereby breached the peace.

58.     Additionally, PRR breached the peace by detaining Plaintiff within his vehicle.

59.     By continuing with its repossession after it lost the right to do so, PRR violated 15 U.S.C. § 1692f(6)(A) by taking non-judicial action to effect dispossession of Plaintiff's property where the property was exempt by law from such dispossession.

60.     PRR's repossession was intensely stressful for Plaintiff and as a result, he has suffered actual damages.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Adjudging that PRR violated 15 U.S.C. § 1692f(6)(A);

b)  Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c)  Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d)  Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e)  Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

f)  Awarding such other and further relief as the Court may deem proper.

## COUNT II
## VIOLATION OF TEX. BUS. & COM. CODE § 9.609(b)(2)
## BRIDGECREST

61.     Plaintiff repeats and re-alleges each factual allegation contained above.

62.     Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace."   TEX. BUS. & COM. CODE § 9.609(b)(2).

63.     However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral.  *Id.*

64.     A repossession agent breaches the peace if he continues with a repossession over a consumer's protest.

65.     Secured creditors have a nondelegable duty not to breach the peace when they repossess secured collateral. The courts may find them liable for the acts of independent contractors who breach the peace in the course of repossessing secured collateral.  *MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 154 (Tex. 1992); *see also Doucette v. Belmont Sav. Bank*, No. ESCV20161596D, 2017 WL 2427566, at *2 (Mass. Super. Apr. 14, 2017); *Binion v. Fletcher Jones of Chicago, Ltd.*, 2014 IL App (1st) 131710-U, ¶ 19; *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, 956 P.2d 858; *DeMary v. Rieker*, 302 N.J. Super. 208, 695 A.2d 294 (App. Div. 1997); *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 55 (Mo. Ct. App. 1996); *Mauro v. Gen. Motors Acceptance Corp.*, 164 Misc. 2d 871, 876, 626 N.Y.S.2d 374, 377 (Sup. Ct. 1995); *Clark v. Assocs. Commercial Corp.*, 877 F. Supp. 1439, 1448 (D. Kan. 1994); *Hester v. Bandy*, 627 So. 2d 833, 843 (Miss. 1993); *Sammons v. Broward Bank*, 599 So. 2d 1018, 1019 (Fla. Dist. Ct. App. 1992); *McCall v. Owens*, 820 S.W.2d 748, 752 (Tenn. Ct. App. 1991); *Massengill v. Indiana Nat'l Bank,* 550 N.E.2d 97, 99 (Ind. Ct. App.1990); *Nichols v. Metro. Bank*, 435 N.W.2d 637, 640 (Minn. Ct. App. 1989); *Gen. Fin. Corp. v. Smith*, 505 So. 2d 1045, 1047 (Ala. 1987); *Henderson v. Security Nat'l Bank,* 72 Cal. App.3d 764, 140 Cal. Rptr. 388, 390–91 (1977).

66.     Bridgecrest's repossession agent, PRR, breached the peace by continuing its repossession in the face of Plaintiff's loud and unequivocal protest and by falsely imprisoning him within his vehicle.

67.     Bridgecrest violated TEX. BUS. & COM. CODE § 9.609(b)(2) when its repossession agent, PRR, breached the peace during its attempted repossession of Plaintiff's Vehicle.

68.     PRR's repossession was intensely stressful for Plaintiff and he has suffered actual damages as a result.

69.     In violating Plaintiff's rights under TEX. BUS. & COM. CODE § 9.609(b)(2), Bridgecrest 's repossession agents acted with malice and/or gross neglect.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Adjudging that Bridgecrest violated TEX. BUS. & COM. CODE § 9.609(b)(2);

b)  Awarding Plaintiff statutory damages, pursuant to TEX. BUS. & COM. CODE § 9.625(c)(2);

c)  Awarding Plaintiff actual damages, pursuant to TEX. BUS. & COM. CODE § 9.625(c)(1);

d)  Awarding Plaintiff exemplary damages;

e)  Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

f)  Awarding such other and further relief as the Court may deem proper.

**COUNT III**
**VIOLATION OF TEX. FIN. CODE § 392.301(a)(8)**
**BRIDGECREST**

70.     Plaintiff repeats and re-alleges each and every factual allegation contained above.

71.     Texas law provides that secured parties may take possession of collateral without judicial action so long as there is no "breach of the peace." TEX. BUS. & COM. CODE § 9.609(b)(2).

72.     However if collateral cannot be repossessed without a breach of the peace, a party must get a court order to take possession of the collateral. *Id*.

73.     A repossession agent breaches the peace if he continues with a repossession over a consumer's protest.

74.     Plaintiff loudly and unequivocally protested PRR's repossession.

75.     Once Plaintiff protested PRR's repossession, it lost the right to continue with the repossession.

76.     Nonetheless, PRR continued with its repossession and thereby breached the peace.

77.     Bridgecrest's repossession agent, PRR, threatened to and engaged in illegal conduct by continuing their repossession in the face of Plaintiff's loud and unequivocal protest.

78.     Secured creditors have a nondelegable duty when they repossess secured collateral. The courts may find them liable for the acts of independent contractors who breach the peace in the course of repossessing secured collateral.

79.     As the secured creditor that hired PRR, Bridgecrest is liable for PRR's conduct.

80.     Bridgecrest violated TEX. FIN. CODE § 392.301(a)(8) by taking—through its agents PRR—an action prohibited by law in connection with the collection of Plaintiff's alleged debt.

81.     Defendants' repossession was intensely stressful for Plaintiff and as a result, he has suffered actual damages.

82.     In violating Plaintiff's rights under TEX. FIN. CODE § 392.301(a)(8), Bridgecrest 's repossession agents acted with malice and/or gross neglect.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that Bridgecrest violated TEX. FIN. CODE § 392.301(a)(8);

b) Awarding Plaintiff injunctive relief pursuant to the TDCA;

c) Awarding Plaintiff actual damages pursuant to the TDCA;

d) Awarding Plaintiff exemplary damages;

e) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action;

f) Awarding Plaintiff any pre-judgment and post-judgment interest as permissible by the law; and

g) Awarding such other and further relief as the Court may deem just and proper.

## COUNT IV
## FALSE IMPRISONMENT UNDER TEXAS COMMON LAW
## PRR AND BRIDGECREST

83.     Plaintiff repeats and re-alleges each and every factual allegation contained above.

84.     PRR's repossession personnel blocked Plaintiff and trapped him in his vehicle.

85.     Moreover, PRR's repossession personnel advised Plaintiff that they were taking his vehicle.

86.     Thus Plaintiff could not leave the scene without his vehicle—a most expensive possession—being taken from him.

87.     PRR had no legal authority to confine Plaintiff within his vehicle.

88.     PRR had no legal authority to keep Plaintiff at the scene under threat that his vehicle would be taken if he left.

89.     PRR kept Plaintiff at the scene against his will.

90.     By trapping Plaintiff in his vehicle, and preventing her from leaving the scene by threatening to take his vehicle if he did, PRR falsely imprisoned Plaintiff, and as a result, he suffered actual damages.

91.     In falsely imprisoning Plaintiff, PRR acted with malice and/or gross neglect.

92.     As the secured creditor that hired PRR, Bridgecrest is liable for PRR's conduct.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Adjudging that PRR falsely imprisoned  Plaintiff;

b)  Adjudging that Bridgecrest , as the secured creditor that hired PRR, is responsible for PRR's false imprisonment of Plaintiff;

c)  Awarding Plaintiff actual damages;

d)  Awarding Plaintiff exemplary damages;

e)  Awarding Plaintiff any pre-judgment and post-judgment interest as permissible by the law; and

f)  Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

93.     Plaintiff is entitled to and hereby demands a trial by jury.

Dated: January 23, 2020

Respectfully submitted,

/s/ Russell S. Thompson IV
Russell S. Thompson IV
Southern District Bar # 1572841
Thompson Consumer Law Group, PC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206
Telephone:     602-388-8898
Facsimile:     866-317-2674
rthompson@ThompsonConsumerLaw.com

Attorneys for Plaintiff

14